Macaulay Williams
66 Burton Ave
South River, NJ 08882
Tel: 848 207 5845

Gina Raimondo
United States Secretary of Commerce
1401 Constitution Avenue,
N.W. Washington, DC 20230
Tel:202-482-5949
Email:rhill@doc.gov

Case: 1:24−cv−01492 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 5/13/2024
Description: Employ. Discrim. (H−DECK)

# UNITED STATES DISTRICT COURT DISTRICT OF COLUMBIA

Macaulay Williams,

*Plaintiff*

V.

Gina Raimondo,

United States Secretary of Commerce

*Defendant*



RECEIVED

MAY  13  2024

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

COMPLAINT

1. The District Court has jurisdiction under 5 U.S.C. § 7703(b)(2) because Plaintiff Complaint is based on the Title VII of the Civil Rights Act of 1964 federal discrimination statute.

2. Macaulay Williams ("Williams," "Plaintiff") petitions the Court under 5 U.S.C. § 7703(a)(1) for relief from the United States of America Merit Systems Protection Board (MSPB) April 23, 2024, final decision Docket No. DC-0752-17-0595-I-1.

3. Plaintiff is requesting representation by a court-appointed lawyer and the waiver of any filing fees, and any other fees and costs, under 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

4. The MSPB administrative decision removed Plaintiff from Defendant's employment for excessive approved absence and issued a final decision on Plaintiff's Title VII discrimination allegations.

5. The MSPB administrative decision alleged that Plaintiff was removed because Defendant provided him with one thousand one hundred nine hours and twenty-five minutes (1,109.25 hours) of approved leave without pay (LWOP) from February 13, 2016, to February 3, 2017.

6. Plaintiff, Williams, race - African American, color - black, was a Patent Examiner with the U.S. Patent and Trademark Office, Department of Commerce.

7. About September 12, 2015, Plaintiff filed a discrimination complaint with Defendant accusing his first level Supervisor of discrimination, harassment, retaliation and hostile work environment.

8. About December 21, 2015, Plaintiff filed a discrimination complaint with Defendant accusing his second level Supervisor of discrimination, harassment, and retaliation.

9. In January 2016, Defendant's Human Resource official, Darrell Disque, told Plaintiff to drop his discrimination complaint or Defendant would initiate proceedings to remove Plaintiff based on approved LWOP.

10. In February 2016, Defendant's Human Resource official, Jennifer Ware (Ms. Ware), contacted Plaintiff and told him that Defendant had initiated a falsification of record investigation against Plaintiff.

11. Ms. Ware accused Plaintiff of falsifying his Declaration of Federal Employment (OF-306) records.

12. In February 2016, Plaintiff told Ms. Ware that he did not falsify the Declaration of Federal Employment (OF-306) records.

13. Plaintiff further told Ms. Ware that Defendant had baselessly started an investigation to retaliate against him because of his ongoing discrimination complaints.

14. Defendant alleged that about February 10, 2016, it dropped a letter on Plaintiff's front door warning that Plaintiff may face adverse action for excessive approved absences including removal if he did not return to work.

15. Plaintiff did not receive Defendant's February 10, 2016, letter allegedly dropped off at Plaintiff's front door.

16. Defendant alleged that it dropped the February 10, 2016, letter at Plaintiff's front door notwithstanding Plaintiff's mailbox was less than ten (10) feet from his front door.

17. Defendant did not mail the alleged February 10, 2016, letter to Plaintiff's address because Defendant wanted to deny Plaintiff notice, service and receipt of the alleged letter.

18. On or about July 7, 2016, Defendant provided Plaintiff with a letter and other documents proposing his removal for an alleged improper conduct, falsification of the Declaration of Federal Employment (OF-306) records, and excessive approved leave.

19. Defendant's July 7, 2016, documents included a letter suspending Plaintiff from work for over sixty days (60), from July 7, 2016, through Wednesday, September 14, 2016.

20. On July 11, 2016, Defendant provided Plaintiff with another letter informing Plaintiff that it was correcting Plaintiff's suspension to "... run Sunday, July 17, 2016, through Wednesday, September 14, 2016 ... You (Plaintiff) will return to work on Thursday, September 15, 2016." See *Exhibit PX001*.

21. About September 6, 2016, Plaintiff presented to Defendant's assistant deputy commissioner of Patents and Trademarks, Donald Hajec, documentary evidence showing that Plaintiff did not falsify the Declaration of Federal Employment (OF-306) records.

22. On September 7, 2016, Defendant ended Plaintiff's suspension and returned Plaintiff to work.

23. About November 1, 2016, Plaintiff informed Defendant's assistant deputy commissioner of Patents and Trademarks, Donald Hajec, that Defendant's false accusations that Plaintiff falsified Federal Employment (OF-306) records and hostile treatment by his supervisor was affecting his mental health and well-being.

24. On or about November 3, 2016, Defendant's assistant deputy commissioner of Patents and Trademarks, Donald Hajec, instructed Plaintiff's Supervisor to provide Plaintiff with FMLA leave.

25. On or about November 3, 2016, Plaintiff's Supervisor provided Plaintiff with FMLA leave.

26. On or about December 17, 2016, Plaintiff reported to Defendant's HR Official Jenifer Ware, Commissioner Donald Hajec, and Plaintiff's second level Supervisor, David Wiley, that Plaintiff's supervisor was retaliating against Plaintiff.

27. On March 1, 2017, while Plaintiff was on FMLA leave, Defendant issued Plaintiff with a new Notice of Proposed Removal for one excessive approved absence charge for LWOP.

28. Defendant's March 1, 2017 proposed removal charge for excessive approved absences included alleged LWOP for three Federal holidays, February 15, 2016, May 30, 2016, and July 4, 2016, notwithstanding Plaintiff was not required to report for duty on federal holidays.

29. Plaintiff thereafter returned to work from his FMLA leave and performed exceptionally.

30. Defendant's March 1, 2017 removal charge for excessive approved absences included the alleged LWOP it provided Plaintiff between February 13, 2016 and July 4, 2016 notwithstanding that Defendant had already disciplined Plaintiff with over sixty days suspension for those alleged LWOP absences.

31. Defendant's March 1, 2017 removal charge for excessive approved absences further included the over sixty (60) days' periods of time it suspended plaintiff from employment, July 7, 2016 through Wednesday, September 14, 2016.

32. Defendant's March 1, 2017 removal charge for excessive approved absences further included the period of time it had approved Plaintiff for FMLA leave, November 3, 2016 to March 3, 2016.

33.  Defendant's LWOP policy, between January 2015 and December 2017, required that all LWOP requests greater than five days required Director's approval.

34.  Defendant's Director did not approve any of Plaintiff's LWOP.

35. Defendant did not inform Plaintiff that it had approved Plaintiff for LWOP.

36.  Defendant did not approve Plaintiff for LWOP.

37. On June 7, 2017, Defendant removed Plaintiff for excessive approved absences base on alleged LWOP.

38. On November 14, 2017, Defendant admitted that it granted Patent Examiner Mr. Hexing Liu with over one thousand six hundred two (1602) hours of LWOP in 2016.

39. On November 14, 2017, Defendant admitted that Patent Examiner, Mr. Hexing Liu is of race, Asian American and color, brown.

40. During Plaintiff's employment with Defendant, both Patent Examiners, Mr. Liu and Plaintiff, were employees under Director David Wiley.

41. Defendant granted Mr. Liu over one thousand six hundred two (1602) hours of LWOP in 2016 but did not remove Mr. Liu for excessive absences but removed Plaintiff from his employment for allegedly using less LWOP, one thousand one hundred nine hours and twenty-five minutes (1,109.25 hours) in 2016 and 2017.

42.  On November 14, 2017, Defendant admitted that it granted Hexing Liu over Three hundred and fifty-seven hours of LWOP in 2012 but did not remove Mr. Liu for excessive absences.

43.  On November 14, 2017, Defendant admitted that it granted Hexing Liu over Two hundred and twenty-four (224) hours of LWOP in 2013 but did not remove Mr. Liu for excessive absences.

44. On November 14, 2017, Defendant admitted that it granted Hexing Liu over two hundred and sixty-nine hours (269) LWOP in 2014.

45. On November 14, 2017, Defendant admitted that it granted Hexing Liu over four hundred and twenty-one (421) LWOP hours in 2015 but did not remove Mr. Liu for excessive absences.

46. Defendant admitted that between 2012 and 2016 it granted Mr. Liu with over two thousand eight hundred and seventy-eight (2878) hours of LWOP but did not remove Mr. Liu for excessive absences.

47. Defendant has admitted that it has granted many Patent Examiners LWOP of six hundred (600) or more hours but has not removed any of them for excessive absences.

48. Defendant has refused to release the names, race, color and sex of these large numbers of Patent examiners it has granted LWOP of six hundred (600) or more hours claiming that it would be detrimental to its leave policy.

49. Plaintiff assumes that Defendant has refused to release the names, race, color, and sex of these large numbers of Patent examiners it has granted LWOP of six hundred (600) or more hours because these patent examiners are white males and white females, and Defendant wants to cover up its discrimination.

50. Plaintiff reserves the right to amend his complaint when Defendant provides the information including the names, race, color, and sex of these large numbers of Patent examiners it had approved with significant amount of LWOP but did not remove.

51. On January 17, 2018, the Defendant's Director, David Wiley, swore under oath that around January 2016, the Defendant's Office of Human Resources began an investigation into Plaintiff's, Mr. Williams, on allegation of Falsification of Federal Employment (OF-306) records with related to a removal from a previous position.

52. On January 17, 2018, the Defendant's Director, David Wiley, swore under oath that the Defendant's Office of Human Resources investigation of Plaintiff's, Mr. Williams, for Falsification of Federal Employment (OF-306) records was the basis for Plaintiff's July 7, 2016 proposed removal.

53.  On January 17, 2018, the Defendant's Director, David Wiley, swore under oath that he rescinded Plaintiff's July 7, 2016 proposed removal because there was no evidence Plaintiff falsified Federal Employment (OF-306) records.

"… after I (Mr. Wiley) proposed Mr. Williams' removal (on July 7, 2016), he returned to the office and performed some amount of work … I (Mr. Wiley) rescinded the Proposal. I (Mr. Wiley) felt that rescission was justified based on the evidence Mr. Williams' submitted relating to this falsification (of Federal Employment (OF-306) records) charge, along with his return to work."

54. On January 17, 2018, the Defendant's Director, David Wiley, swore under oath that

" … As soon as November of that year (2016), Mr. Williams presented evidence that he had a medical condition and was unable to return to work (and Defendant provided Williams with FMLA leave) …"

55. On January 17, 2018, the Defendant's Director David Wiley swore under oath that while Williams was on FMLA leave "… On March 1, 2017, I (Director Wiley) issued a new Notice of Proposed Removal for Mr. Williams…"

56.  On January 17, 2018, the Defendant's Director David Wiley swore under oath that "… At any time Mr. Williams could have returned to the workplace. The Agency (Defendant) did not direct him (Williams) to use (FMLA) leave. His (Williams) absences were voluntary and due to his own (FMLA) medical condition."

Plaintiff incorporates Paragraphs 1 – 56 into the Complaint and alleges the following violation(s) by Defendant.

**Count I-- - Defendant Has Not Proven Its One Charge of Excessive Approved Absences.**

57. Defendant removed Plaintiff on one charge of excessive absences, but Defendant has not proven its charge of excessive absences.

58. The charge of excessive absences requires Defendant to have adequately notified Williams he could be disciplined for excessive LWOP approved absences.

59. Defendant's allegation that about February 10, 2016, it dropped a letter on Plaintiff's front door to notify Plaintiff he could be disciplined for excessive approved absences did not provide adequate notification because Plaintiff did not receive Defendant's alleged February 10, 2016 letter.

60. Defendant has not, at any time, asked Plaintiff whether he had received its alleged February 10, 2016 letter which warned of discipline for excessive approved LWOP absences.

61. Defendant has not, at any time, asked Plaintiff's representative whether Plaintiff had received its alleged February 10, 2016 letter warning of discipline for excessive approved LWOP absences.

62. Plaintiff has at all times, including during sworn statements, stated that he did not receive Defendant's alleged February 10, 2016 letter warning of discipline for excessive approved LWOP absences.

63. Defendant's charge of excessive approved absences requires that Defendant proves that it had approved Plaintiff for the alleged time of LWOP.

64. Defendant has not proved its one charge of excessive absences because Defendant did not approve Plaintiff for LWOP.

65. Defendant has not proved its one charge of excessive absences because Defendant did not notify Plaintiff that it had approved him for LWOP.

66. Defendant has not proved its one charge of excessive approved absences because Defendant had already disciplined Plaintiff by suspending him from work in July 2016 for the same alleged violations from February 13, 2016 to September 2016, covering the alleged LWOP approved absences period that Defendant used to remove Plaintiff on July 7, 2017. See *Exhibit PX001.*

## Count II-- - Violation of Plaintiff's Constitutional Due Process Rights.

67. Defendant has violated Plaintiff's constitutional due process rights because Defendant did not adequately notify Plaintiff he could be disciplined for excessive approved absences.

68. Defendant's alleged February 10, 2016 letter violated Williams' due process rights because Williams did not receive the February 10, 2016 letter to warn him that he could be disciplined for using excessive approved LWOP.

69. Defendant has violated Plaintiff's due process rights because Defendant did not provide fair notice nor used a reasonable means to notify Plaintiff of Defendant's alleged February 10, 2016 letter which would have notified Plaintiff that he could be disciplined for excessive LWOP approved absences.

70. Defendant violated Plaintiff's due process rights by suspending him from employment, July 7, 2016, through Wednesday, September 14, 2016, without fair notice and without a fair hearing and without an opportunity to respond and to be heard. See *Exhibit PX001.*

## Count III: Violation of Title VII, 42 U.S.C. § 2000e-16(a), Discrimination Based on Plaintiff's Race.

71. Defendant discriminated when it terminated Williams' employment because of his race, African American, while retaining similarly situated Patent Examiner Hexing Liu

because of his race Asian for the similarly alleged conduct of using excessive LWOP leave.

72.  Defendant has admitted that it granted Mr. Liu over one thousand six hundred and two (1602) hours of LWOP in one year in 2016, but did not remove Mr. Liu for excessive absences, but removed Plaintiff from his employment for allegedly using less LWOP, one thousand one hundred and nine hours and twenty-five minutes (1,109.25 hours) over a two-year period, from 2016 through 2017.

73. Defendant has admitted that it retained similarly situated white men and white women Patent Examiners to Plaintiff who used similar LWOP but did not remove these white men and white women.

74. Defendant retained these similarly situated white men and white women Patent Examiners with comparable LWOP but removed Plaintiff to discriminate against him because of his African American race.

## Count IV: Violation of Title VII, 42 U.S.C. § 2000e-16(a), Discrimination Based on Plaintiff's Color.

75. Defendant discriminated when it terminated Williams' employment because of his color, black, while retaining similarly situated Patent Examiner Hexing Liu, because of his color, brown, for a similarly alleged conduct of using excessive LWOP leave.

76. Defendant has admitted that it approved Mr. Liu with over two thousand eight hundred and seventy-eight (2878) hours of LWOP but did not remove Mr. Liu for excessive absences but removed Williams because of his color, black, from his employment for allegedly using less LWOP, one thousand one hundred and nine hours and twenty-five minutes (1,109.25 hours) over a two-year period from 2016 through 2017.

77. Defendant has admitted that it retained white men and white women Patent Examiners who were similarly situated to Plaintiff who used similar LWOP as it alleged of Plaintiff but did not remove these white men and white women.

78. Defendant retained these similarly situated white men and white women who used comparable approved LWOP to Plaintiff, because it wanted to discriminate against Williams because of his color, black.

**Count V: Violation of Title VII, 42 U.S.C. § 2000e-16(a), Retaliation for Protected EEO Activity.**

79. In September 2015 and in December 2015, Plaintiff filed discrimination complaints against his first level and second level supervisors respectively.

80. In January 2016 Darrell Disque of Defendant's Office of Human Resources asked Plaintiff to drop his discrimination complaints or Defendant would remove Williams from employment based on approved LWOP.

81. On January 17, 2018, the Defendant's Director David Wiley swore under oath that around January 2016, the Defendant's Office of Human Resources began an investigation into Plaintiff's, Mr. Williams, alleged misconduct of Federal Employment (OF-306) records.

82. In February 2016, Jennifer Ware of Defendant's Office of Human Resources contacted Plaintiff about Defendant's investigation into Plaintiff's alleged misconduct of Federal Employment (OF-306) records.

83. On July 7, 2016, Defendant's Director David Wiley proposed Plaintiff's removal based on the alleged misconduct of falsification of Federal Employment (OF-306) records and excessive absences charge based on approved LWOP.

84. About July 7, 2016, Defendant suspended Plaintiff from July 7, to September 14, 2016 without any fair notice and time to respond based on the alleged misconduct of

falsification of Federal Employment (OF-306) records and excessive absence charge based on approved LWOP. See *Exhibit PX001.*

85. Defendant investigated Plaintiff for falsification of Federal Employment (OF-306) records to retaliate against Plaintiff for engaging in protected EEO Activity.

86. Defendant proposed the removal of Plaintiff for falsification of Federal Employment (OF-306) and excessive absence charge to retaliate against Plaintiff for engaging in protected EEO Activity.

**Count VI: FMLA Retaliation.**

87. About November 3, 2016, Defendant granted Plaintiff with FMLA leave.

88. On January 17, 2018, Defendant's Director official David Wiley swore under oath that he was aware of Plaintiff's November 3, 2016 FMLA leave.

89. On January 17, 2018, David Wiley swore under oath that,

"… I (Director Wiley) rescinded the Proposal (Mr. Williams July 7, 2016, proposed removal). I (Director Wiley) felt that rescission was justified based on the evidence Mr. Williams' submitted relating to this falsification charge, along with his return to work."

90. Director Wiley further swore that on March 1, 2017, he issued the proposed removal that removed Williams because Mr. Williams left the workplace on FMLA leave around November 3, 2016.

91. Defendant's Director official David Wiley stated in a sworn statement that he issued the March 1, 2017 proposed removal to retaliate against Plaintiff for taking FMLA leave.

92. Defendant included the Plaintiff's November 3, 2016 to February 3, 2017 FMLA leave in its excessive approved leave charge to retaliate against Plaintiff for taking and using the benefits and privileges of FMLA leave.

**Remedy to redress discrimination.**

93. Wherefore, Plaintiff requests judgment and compensatory damages in the form of back pay, interest on back pay, promotion, overtime, front pay, retirement benefits, emotional distress, and any other damages the Court deems would make Plaintiff whole.

94. Plaintiff further requests attorney fees and costs of suit.

**Demand For Jury Trial**

95. Plaintiff requests a trial by jury.

**Statement of No Other Parties**

96.  Plaintiff knows of no other parties who should join in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 13, 2024

Macaulay Williams,  Plaintiff